UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:20-cv-03888 |
| | : | |
| POOLS BY SNYDER, LLC, JEFFREY SNYDER, and ANTHONY LABBADIA, | : | |
| Defendants. | : | |

**O P I N I O N**
Motion for Default Judgment, ECF No. 15– Granted in part and Denied in part

**Joseph F. Leeson, Jr.**                                                                                 **May 12, 2021**
**United States District Judge**

## I.     INTRODUCTION

This matter arises from an underlying state court action by homeowner Anthony Labbadia regarding the construction of a swimming pool at his residence. Labbadia filed suit against Pools by Snyder, LLC ("Pools") and its owner, Jeffrey Snyder ("Snyder"), in the Northampton County Court of Common Pleas, alleging that faulty workmanship in the construction of the pool caused Labbadia financial injury. Pools tendered its defense of the Labbadia suit to Acuity, the carrier of its Commercial General Liability ("CGL") policy. During the pendency of the underlying state action, Acuity filed the instant case before this Court, seeking a declaration that Acuity has no duty to defend or indemnify Pools and Snyder in the Labbadia lawsuit. None of the Defendants in this matter have appeared or otherwise responded to any filings in the instant action.

1
051121

Now before this Court is Acuity's motion for entry of default judgment. For the reasons set forth below, the motion is granted in part and denied in part.

## II.   BACKGROUND

On February 25, 2020, Labbadia filed suit against Pools and Snyder in the Northampton County Court of Common Pleas. *See* Compl. ¶ 13, ECF No. 1. Labbadia filed an amended complaint on June 16, 2020. *See id.* at ¶ 14. Therein, Labbadia alleges that he contracted with Pools to have an inground swimming pool constructed on his property. *See id.* at ¶ 16. After the completion of the installation, Labbadia began to notice "issues" with the pool. *See id.* Specifically, Labbadia alleges that Pools failed to properly compact the stone base before continuing construction, which led to "bubbling, liner problems and collapse" of the subject pool. *See id.* Accordingly, Labbadia seeks damages from Pools and Snyder. *See id.*

Pools is the named insured on an insurance policy issued by Acuity. *See id.* at ¶ 11. In light of the insurance policy, Pools tendered its defense of the Labbadia suit to Acuity. *See id.* at ¶ 17. In response, Acuity assigned an attorney to defend Pools in the Labbadia suit. *See id.* at ¶ 18.

On August 10, 2020, Acuity filed the present action before this Court, naming Pools, Snyder, and Labbadia as Defendants. *See id.* In its Complaint, Acuity asserts that the facts in Labbadia's amended complaint do not trigger coverage under the terms of the CGL policy through which Pools is insured. *See id.* at ¶ 19. Accordingly, Acuity seeks relief in the form of a declaration that it does not have a duty to defend or indemnify Pools and Snyder in the underlying state action. *See id.* 11-12. Labbadia was served with process on September 24, 2020. *See* ECF No. 5. Receiving no response to the Complaint, on October 28, 2020, Acuity requested the Clerk enter default as to Labbadia, and the Clerk entered default that same day.

*See* ECF No. 8. Acuity served the request for default on Labbadia by first-class mail, and Labbadia did not respond. *See id.*

On November 5, 2020, Acuity sought leave to serve Pools and Snyder by alternative process. *See* ECF No. 9. On November 9, 2020, this Court granted Acuity such leave, *see* ECF No. 10, and on November 20, 2020, Acuity filed proof of service on Pools and Snyder by Federal Express, first-class mail, and posting, *see* ECF Nos. 11, 12.

On December 15, 2021, Acuity requested entry of default against Snyder and Pools. *See* ECF Nos. 14, 15. The Clerk of Court entered default that same day. Acuity served the requests on Pools and Snyder by first-class mail, and neither responded. *See id.* On January 29, 2021, Acuity filed the present Motion for Entry of Default Judgment against Defendants. *See* Mot. ECF No. 17. Acuity served the motion on all Defendants by first-class mail, and none of the Defendants responded. *See id.*

## III.    LEGAL STANDARDS

### A.    Declaratory Judgment – An Insurer's Duty to Defend and Indemnify

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)). In light of the underlying state suit, this Court has jurisdiction to consider whether Acuity has a duty to defend, and it will exercise that jurisdiction.

While the question of whether an insurer has a duty to indemnify is generally "not ripe for adjudication until the insured is in fact held liable in the underlying suit," *Knightbrook Ins. Co. v. DNA Ambulance, Inc.*, No. 13-2961, 2013 U.S. Dist. LEXIS 176592, at *19-20 (E.D. Pa.

Dec. 16, 2013) (citing *Heffernan & Co. v. Hartford Ins. Co.*, 614 A.2d 295, 298 (Pa. Super. 1992)), because a duty to indemnify cannot exist without a duty to defend, if the Court concludes that Acuity has no duty to defend, it must necessarily hold that there is no duty to indemnify either, *see Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999); *Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 702 (E.D. Pa. 2012) (holding that because the insurer had no duty to defend, it necessarily had no duty to indemnify, and was therefore entitled to a declaratory judgment on the indemnification count as well).

  B.  **Default Judgment – Legal Standards**

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a properly served defendant when a default has been entered by the Clerk of Court. *See* FED. R. CIV. P. 55(b)(2); *see also Anchorage Assocs. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). To obtain a default judgment, the plaintiff must "file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit. . . ." *See* 50 U.S.C. § 3931(b)(1). This affidavit, required by the Servicemembers Civil Relief Act, "is a mandatory precondition to any default judgment, even if the requirements of Rule 55 for default judgment are otherwise met." *See Coss v. Clemente*, No. 3:10-1479, 2011 U.S. Dist. LEXIS 71891, at *3-4 (M.D. Pa. June 9, 2011) (internal quotations omitted).

Additionally, a plaintiff seeking default judgment must submit "an affidavit or affirmation from the moving party or its attorney, indicating that the defendant is a competent adult . . . ." *See FirstBank Puerto Rico v. Jaymo Props., LLC*, 379 F. App'x 166, 170 (3d Cir. 2010) (collecting cases). "Assuming that the other requirements for entry of default judgment

4
051121

contained in Rule 55 have been met," an affidavit of this sort is "routinely treated as sufficient evidence for the court to enter default judgment against [a] defendant." *See id.*

"Three factors control whether a default judgment should be granted":

"(1) prejudice to the plaintiff if default is denied,"

"(2) whether the defendant appears to have a litigable defense,"

"(3) whether defendant's delay is due to culpable conduct."

*Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). In considering these factors, the "court should accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions or allegations relating to the amount of damages." *Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017).

### C. Law Governing the Duty to Defend in Pennsylvania

In the Commonwealth of Pennsylvania, an insurance company's obligation to defend an insured is analyzed under a two-part framework. *See Simon Wrecking Co. v. AIU Ins. Co.*, 350 F. Supp. 2d 624, 640 (E.D. Pa. 2004). The court is first required to ascertain the scope of the policy's coverage. *See id.* Following that determination, "the court must examine the complaint in the underlying action to ascertain if it triggers coverage." *See id.* (citing *Gen. Acc. Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997)). "An insurer's duty to defend is triggered if the factual allegations in the complaint, taken as true, 'would support a recovery that is covered by the policy.'" *USAA Gen. Indem. Co. v. Floyd*, No. 19-03820, 2019 U.S. Dist. LEXIS 203893, at *6 (E.D. Pa. Nov. 25, 2019) (quoting *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)).

## IV. DISCUSSION

### A. Default Judgment against Individual Defendants

Acuity seeks entry of default judgment against individual Defendants Jeffrey Snyder and Anthony Labbadia. With respect to Snyder, Acuity's motion omits required information. Acuity failed to file an affidavit or provide other evidence stating whether Snyder is in active military service. Additionally, Acuity failed to file an affidavit or otherwise aver that Snyder is a competent adult against whom default judgment may be entered. Accordingly, Acuity's request for default judgment against Snyder is denied without prejudice.

For those same reasons, Acuity's request for entry of default judgment against Labbadia is denied. Acuity did not file either of the required affidavits with respect to Labbadia. Moreover, it appears that Acuity has improperly named Labbadia in this lawsuit simply because Labbadia is a party—specifically, the plaintiff—in the underlying state action. Acuity does not suggest, nor does the CGL policy indicate, that Acuity has any contractual relationship with Labbadia such that a duty to defend Labbadia would even arise. Accordingly, Acuity's request for entry of default judgment against Labbadia is denied.

### B. Default Judgment against Pools

Acuity also seeks entry of default judgment against Pools. Pursuant to this Court's Order dated November 9, 2020, Acuity served process on Pools by alternative process, sending process by Federal Express and first-class mail and posting a copy at the Defendant's place of business. Accordingly, this Court turns to balancing the three factors governing entry of default judgment.

1. **Prejudice to Acuity**

The first factor to weigh is the prejudice to Acuity if default judgment is denied. This factor balances in favor of granting default judgment. Acuity has paid for the cost of defending Pools in the underlying state action, and it will continue to pay the cost to defend Pools if default judgment is not entered.

2. **Whether Pools Has a Litigable Defense**

The second factor to balance is whether Pools has a litigable defense available to it. The second factor also weighs in favor of granting default judgment. To determine the existence of a litigable defense in this case, the Court must examine whether Acuity has a duty to defend Pools under the CGL policy. Pennsylvania law provides a two-part framework for determining an insurer's duty to defend. First, the court must ascertain the scope of the coverage. This analysis is guided, in large part, by the terms of the CGL policy itself.

In Section I of the CGL policy, entitled "Coverages," subsection 1(b)(1) states that "[t]his insurance applies to bodily injury and property damage only if: (1) the bodily injury or property damage is caused by an *occurrence* that takes place in the coverage territory . . . ." *See* CGL Policy 66, ECF No. 1-4 (ECF Pagination). In Section V, entitled "Definitions," the term "occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See id.* at 79. This definition is amended by a later provision of the policy to include the following:

> Occurrence includes:
> A. Property damage to your work if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor and the property damage to your work is included in the products-completed operations hazard;
> B. Property damage to property other than your work that arises out of your work.

*See id.* at 102.

"Webster's II New College Dictionary 6 (2001) defines 'accident' as '[a]n unexpected and undesirable event . . . .'" *See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897-98 (Pa. 2006). The Pennsylvania Supreme Court further noted that "[t]he key term in the ordinary definition of 'accident' is 'unexpected.' This implies a degree of fortuity that is not present in a claim for faulty workmanship." *See id.* at 898 (finding no duty to defend where complaint alleged faulty workmanship as the basis for the injury, and CGL policy required an "occurrence" defined as an "accident"). "[C]laims predicated on faulty workmanship cannot be considered 'occurrences' for purposes of an occurrence based CGL policy as a matter of plain language and judicial construction," because to interpret such claims as an occurrence "would be [] to render the definition of 'occurrence' mere surplusage." *See Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.*, 941 A.2d 706, 715 (Pa. Super. Ct. 2007) (where "occurrence" is defined as "accident," finding insurer had no duty to defend a claim of faulty workmanship). The principles set forth in both *Gambone* and *Kvaerner* have been applied by the Third Circuit in addressing similar matters of CGL interpretation. *See, e.g., Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 238-39 (3d Cir. 2010) (where "occurrence" is defined as "accident," insurer had no duty to defend where claim was premised solely on negligence of contractor).

With the scope of coverage set forth, the Court must then review the complaint in the underlying state action to determine whether the factual allegations, taken as true, trigger coverage under the policy. Labbadia's amended complaint does not contain factual allegations sufficient to trigger coverage under the CGL policy Pools has with Acuity. *See* Compl. At Ex. 5 ("Labbadia Am. Compl."), ECF No. 1-5. In his amended complaint, Labbadia alleges that Pools

"fail[ed] to compact the stone/base prior to starting/completing the mortar/concrete work [and] that has resulted in the issues with the pool of bubbling, liner problems, and collapse." *See id.* at ¶ 14. Labbadia asserts that he suffered financial injury "[a]s a direct and proximate result of Defendants [sic] failure to install the pool in a workmanlike manner." *See id.* at ¶ 17. Indeed, Labbadia dismisses other explanations for the injury, plainly stating that "'[s]ink holes' were not to blame for the issues with Plaintiff's pool." *See id.* at ¶ 13.

Under the terms of the CGL policy and their well-established meaning, Acuity's duty to defend is not triggered by the allegations in Labbadia's amended complaint in the underlying state action. Labbadia's amended complaint squarely alleges that the cause of the injury was faulty workmanship, disclaiming that external forces caused the injury. Under the widely accepted interpretation of the term "occurrence" as it is used in this CGL policy, faulty workmanship does not qualify as a coverage-triggering occurrence. Accordingly, because CGL coverage is not triggered by the allegations in the underlying complaint, there is a very low likelihood that Pools has any litigable defense. Therefore, the second factor balances in favor of granting default judgment.

### 3. Whether the Delay Is Due to Culpable Conduct

The third and final factor balances neutrally. Although Pools could not be personally served despite multiple efforts, proper service was effectuated by alternative process. Moreover, Pools was served a copy of Acuity's request for default and request for default judgment by first-class mail. Pools did not respond to any of those filings.

When a court lacks information as to why a defendant has failed to respond, this factor is typically weighed neutrally. *See, e.g.*, *Great Am. E&S Ins. Co. v. John P. Cawley, Ltd.*, 866 F. Supp. 2d 437, 441-42 (E.D. Pa. 2011) (concluding that because the court had no information

9
051121

"fail[ed] to compact the stone/base prior to starting/completing the mortar/concrete work [and] that has resulted in the issues with the pool of bubbling, liner problems, and collapse." *See id.* at ¶ 14. Labbadia asserts that he suffered financial injury "[a]s a direct and proximate result of Defendants [sic] failure to install the pool in a workmanlike manner." *See id.* at ¶ 17. Indeed, Labbadia dismisses other explanations for the injury, plainly stating that "'[s]ink holes' were not to blame for the issues with Plaintiff's pool." *See id.* at ¶ 13.

Under the terms of the CGL policy and their well-established meaning, Acuity's duty to defend is not triggered by the allegations in Labbadia's amended complaint in the underlying state action. Labbadia's amended complaint squarely alleges that the cause of the injury was faulty workmanship, disclaiming that external forces caused the injury. Under the widely accepted interpretation of the term "occurrence" as it is used in this CGL policy, faulty workmanship does not qualify as a coverage-triggering occurrence. Accordingly, because CGL coverage is not triggered by the allegations in the underlying complaint, there is a very low likelihood that Pools has any litigable defense. Therefore, the second factor balances in favor of granting default judgment.

### 3. Whether the Delay Is Due to Culpable Conduct

The third and final factor balances neutrally. Although Pools could not be personally served despite multiple efforts, proper service was effectuated by alternative process. Moreover, Pools was served a copy of Acuity's request for default and request for default judgment by first-class mail. Pools did not respond to any of those filings.

When a court lacks information as to why a defendant has failed to respond, this factor is typically weighed neutrally. *See, e.g.*, *Great Am. E&S Ins. Co. v. John P. Cawley, Ltd.*, 866 F. Supp. 2d 437, 441-42 (E.D. Pa. 2011) (concluding that because the court had no information

9
051121

related to the motivations of the defendants in failing to appear and defend, the delay could not be deemed willful and in bad faith, rendering the third factor of the default judgment analysis "at most a neutral factor"). Here, this Court is without information as to why Pools has not responded to the Complaint or any subsequent filing. Accordingly, this Court weighs the final factor naturally.

Having weighed all the factors, this Court concludes that default judgment is appropriate against Pools by Snyder, LLC.

## V. CONCLUSION

For the reasons set forth above, Acuity's request for entry of default judgment as against Jeffrey Snyder is denied without prejudice. Additionally, for similar reasons, Acuity's request for entry of default judgment against Anthony Labbadia is denied.

Having considered the factors for granting default judgment, this Court concludes that default judgment is appropriate against Pools by Snyder, LLC, only. Accordingly, default judgment is entered in favor of Acuity against Pools by Snyder, LLC, only. Acuity does not have a duty to defend or indemnify Pools by Snyder, LLC in the underlying state court action: *Labbadia v. Pools by Snyder LLC*, No. C-48-CV-2020-1707 (Northampton Cty. Ct. Com. Pl.).

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge